# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.S.-1, L.S.-2, and L.S.-3**

**No. 18-0103** (Raleigh County 2017-JA-84, 85, and 86)

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father S.S., by counsel Gavin G. Ward, appeals the Circuit Court of Raleigh County's January 9, 2018, order terminating his parental rights to L.S.-1, L.S.-2, and L.S.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Stanley I. Selden, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for an extension of his post-adjudicatory improvement period and not granting him a less-restrictive disposition than termination of his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 27, 2017, the DHHR filed an abuse and neglect petition alleging that L.S.-3 and the mother tested positive for substances upon the child's birth, the parents neglected to provide the child with proper nutrition and medical care, the home had no water or heat and was unsanitary, and petitioner abused substances. Petitioner waived the preliminary hearing and was ordered to submit to drug screens. On May 31, 2017, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations of abuse and neglect, was adjudicated as an abusing parent, and was granted a post-adjudicatory improvement period.

In June of 2017, the multidisciplinary treatment ("MDT") team met and developed a case plan with which petitioner agreed. The case plan required petitioner to remain drug-free, submit to random drug screens, and attend inpatient substance abuse treatment if he failed to comply

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, they will be referred to as L.S.-1, L.S.-2, and L.S.-3 throughout this memorandum decision.

with random drug screening or screened positive for substances. The plan also required petitioner to complete parenting skills and adult life skills classes. On September 27, 2017, the circuit court held a review hearing. Petitioner did not attend, but was represented by counsel. The DHHR reported that petitioner had not provided any drug screens, had not appeared for MDT meetings, and failed to comply with any of the terms and conditions of his post-adjudicatory improvement period.

On November 20, 2017, the DHHR filed a motion to terminate petitioner's post-adjudicatory improvement period due to his non-compliance. On January 3, 2018, the circuit court held a hearing on this motion. An employee from the drug screening facility testified that although petitioner appeared occasionally to screen, he never produced a sample for testing, and had not appeared for testing since June of 2017. A DHHR caseworker testified that petitioner was instructed by the MDT to attend inpatient substance abuse treatment if his sobriety could not be confirmed by drug screens. The caseworker further testified that petitioner claimed that he had a medical condition that caused him to be unable to urinate in front of other people, but petitioner never provided documentation for the condition and, therefore, an alternative method for drug screening was never discussed. She also testified that petitioner participated in about half of the parenting classes and visitations and then quit participating in September of 2017. Pursuant to the case plan, petitioner was directed to participate in services through December of 2017. The caseworker opined that petitioner was unlikely to successfully complete the terms and conditions of his improvement period, even if he was given a three-month extension. Petitioner admitted that he had not drug screened during his post-adjudicatory improvement period, but claimed it was because he could not urinate in front of people. Petitioner admitted that he did not consult with the DHHR to resolve the issue of missed drug screens. Lastly, petitioner claimed that he was willing to enter an inpatient treatment facility at the time of the dispositional hearing, but admitted that he failed to submit to treatment for months, despite his agreement with the MDT to do so.

At the conclusion of the hearing, the circuit court found petitioner failed to comply with the terms and conditions of his post-adjudicatory improvement period and his case plan, and denied his motion for an extension. The circuit court further found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of his parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its January 9, 2018, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[2]According to the guardian, the mother successfully completed her post-adjudicatory improvement period and regained custody of all three children. Although the DHHR retained legal custody of the children, the permanency plan is reunification with the mother while the DHHR continues to monitor the family and assist in the reunification. The concurrent permanency plan is adoption by the maternal grandmother.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T*., 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion for an extension of his post-adjudicatory improvement period. In support of his argument, petitioner asserts that he visited the children and that the visits went well. He further argues that an extension would not impair the DHHR's ability to permanently place the children and that it is in their best interests to be placed with "an improved natural parent." We do not find this argument persuasive.

Pursuant to West Virginia Code § 49-4-610(6),

[a] court may extend any improvement period granted pursuant to subdivision (2) or (3) of this section for a period not to exceed three months when the court finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child[ren]; and that the extension is otherwise consistent with the best interest of the child[ren].

While petitioner argues that he attended visits with the children and that they went well, he admits that he only attended half of the parenting classes until he stopped participating. Further, petitioner failed to submit to drug screens throughout the post-adjudicatory improvement period or attend an inpatient treatment program. Additionally, while he claims that he could not urinate in order to provide a sample for the drug screens, petitioner did not pursue another means of drug testing. Based on this evidence, petitioner failed to substantially comply with the terms and conditions of his post-adjudicatory improvement period and did not meet the burden to receive an extension of the same. Therefore, we find no error in the circuit court's denial of petitioner's motion for an extension of his post-adjudicatory improvement period.

Further, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the

conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" The evidence discussed above also supports the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was in the children's best interest.

Petitioner also argues that the circuit court erred in not granting him a less-restrictive alternative to termination of his parental rights, such as an extension of his improvement period. Petitioner argues that he "completed close to half of the required parenting classes before getting discouraged with the process" and that he promised to comply with the DHHR's request that he attend an inpatient drug treatment program. However, as discussed, petitioner failed to substantially comply with the terms and conditions of his post-adjudicatory improvement period and, therefore, did not meet the burden to receive an extension. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based upon the evidence discussed above, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and termination of his parental rights was in the children's best interests. Therefore, termination was appropriate.

Lastly, because the DHHR retains legal custody of the children and continues to provide reunification services in the matter, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order

must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 9, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating